UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAMA A. AL BAKRI,

     Plaintiff,                  Civil Action No. 16-10644

         v.                District Judge JOHN CORBETT O'MEARA
                          Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Usama A. Al Barkri ("Plaintiff"), brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded to the administrative level for further proceedings.

## PROCEDURAL HISTORY

On March 12, 2013, Plaintiff applied for DIB alleging disability as of November 1,

2011 (Tr. 174-175). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 28, 2014 in Livonia, Michigan (Tr. 41). Administrative Law Judge ("ALJ") Anthony R. Smereka presided. Plaintiff, represented by attorney Richard Amsbaugh, testified (Tr. 45-72), as did Vocational Expert ("VE") Laura Brooks (Tr. 73-79). On January 9, 2015, ALJ Smereka found Plaintiff not disabled (Tr. 19-36). On January 5, 2016, the Appeals Council denied review (Tr. 1-6). Plaintiff filed the present action on February 22, 2016.

## BACKGROUND FACTS

Plaintiff, born November 29, 1956, was 58 at the time of the administrative decision (Tr. 29, 160). He completed four or more years of college and worked previously as an interpreter for the Department of Defense and as a medical advisor and security supervisor (Tr. 192-193). He alleges disability as a result of Post Traumatic Stress Disorder ("PTSD"), depression, hypertension, coronary artery disease, sleep apnea, headaches, a kidney cyst, and adrenal adenoma[1] (Tr. 191).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in Northville, Michigan (Tr. 45). He had formerly worked as an interpreter and was able to converse in Arabic, Kurdish, Urdu, and English (Tr. 46). He was also a

---

[1]

Adrenal adenomas are non-cancerous tumours of the adrenal gland. http://www. netdoctor.co.uk/conditions/liver-kidney-and-urinary-system/a3029/adrenal-adenomas. (Last visited February 20, 2017).

medical doctor (Tr. 46). He noted that while he was hired by the Department of Defense as an interpreter, part of his job required the use of medical degree (Tr. 47). His job required him to lift his military gear weighing more than 50 pounds (Tr. 48). His actually job duties entailed taking care of the detainees' health and obtaining their health records, writing reports, checking on their health, interrogating them, and monitoring their conversations (Tr. 48). He also trained the Iraqi police and military in first aid and emergency treatment (Tr. 48). Over the course of his work, he was involved in gun battles where a number of his friends died (Tr. 49). His job generally required him to lift up to 35 pounds occasionally and 10 pounds frequently (Tr. 50). In addition to the Department of Defense position, he also worked as a security supervisor for General Motors for five years (Tr. 51). The job involved supervising others and doing security tours of the facilities (Tr. 53). That job required him to be on his feet for around six hours a day (Tr. 53).

Plaintiff's counsel then interjected that the SSA had initially determined that Plaintiff was capable of only exertionally light work [2] but later found that he was capable of medium work (Tr. 54).

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Plaintiff then resumed his testimony:

He stood 5' 8" and weighed about 260 pounds (Tr. 54). He had lost weight since he stopped working due to appetite loss (Tr. 54-55). He was right-handed (Tr. 55). He experienced PTSD, depression, and anxiety resulting from watching his friends die in combat zones (Tr. 55). He now isolated himself and felt uncomfortable around others (Tr. 56). He received regular treatment from a psychologist (Tr. 56). He took Panax, Ambient, and Effexor (Tr. 57). In addition to the psychological symptoms, he had been diagnosed with sleep, back, heart, and eye problems, and hypertension (Tr. 57).

Plaintiff was unable to walk for significant distances due to shortness of breath (Tr. 58). Panic attacks also caused shortness of breath (Tr. 58). Chest pains resulting from angina caused pressure and stabbing pain (Tr. 58). He had experienced the knee and back problems for two years (Tr. 59). He required a brace for his right knee and experienced level "5 to 6" knee and back pain (Tr. 59). He also experienced left hand contractions and was now unable to carry anything on the left (Tr. 59). His back pain caused problems sitting for extended periods (Tr. 60). He used high doses of Advil and Ibuprofen for pain (Tr. 60). He also experienced level "5" headaches on a constant basis (Tr. 61). He experienced sleep disturbances and did not sleep more than four hours a night (Tr. 62-63). He spent his days recalling his combat experiences, characterizing his thoughts as daytime "nightmares" (Tr. 63). He was unable to sit for more than 20 minutes due to back pain and chest pressure and was unable to stand for long periods due to knee problems (Tr. 63). He was unable to walk

-4-

more than three houses before turning around (Tr. 64). He was now unable to lift more than a gallon of milk (Tr. 64).

Due to his discomfort in public places, Plaintiff did not drive more than three times a month and generally relied on his family for transportation (Tr. 65). He required reminders from his family to perform self-care tasks (Tr. 66). He seldom watched television due to concentrational problems but enjoyed watching National Geographic shows (Tr. 66). He had scheduled an appointment with a hand specialist for the left hand trigger finger condition (Tr. 68). He received unemployment benefits through 2012, during which time he worked for the contractor to the Department of Defense "a couple of times," but was unable to fulfill his job duties (Tr. 69). He currently treated with a psychologist once a week (Tr. 72).

### B.   Medical Evidence

#### 1.  Records Related to Plaintiff's Treatment

An August, 2012 EKG showed an "indeterminate" defect (Tr. 254, 311). September, 2012 records state that symptoms of sleep apnea were improved with the use of a CPAP machine (Tr. 250). An October, 2012 CT of the abdomen taken in response to a finding of hematuria, was positive for a renal cyst of the right kidney (Tr. 247, 293-294). The same month, treating notes state that Plaintiff was disqualified from future military deployments due to obesity (Tr. 299).

In June, 2013, treating psychologist David St. John, Ph.D. found that Plaintiff experienced marked limitation in memory, sustained concentration, social interaction, and

adaption (Tr. 274-275).

January, 2014 records by Fakhruddin Attar, M.D. note Plaintiff's report of generalized anxiety (Tr. 346). Dr. Attoar's March, 2014 records note upper back pain (Tr. 344). The following month, Plaintiff noted an improvement in lower back pain (Tr. 342). September, 2014 records by Dr. Attar note continuing chest, low back, and knee pain, and a diagnosis of Dupuytren contracture with trigger finger of the right hand (Tr. 335, 337). Plaintiff reported continued depression and anxiety due to his combat experience (Tr. 335). An EKG showed an indeterminate defect (Tr. 353). The same month, Dr. Attar found that due to degenerative arthritis of the bilateral knees, conjunctivitis, and obesity, Plaintiff was unable lift more than 10 pounds frequently, 20 pounds occasionally, or stand or walk for more than two hours in an eight-hour workday (Tr. 410). He noted that the condition of Dupuytren contracture prevented Plaintiff from reaching, pulling, pushing, and fine "manipulating" with the left hand (Tr. 410). He found that Plaintiff experienced limitations in sustained concentration due to anxiety, PTSD, and depression (Tr. 410).

Also in September, 2014, Dr. St. John prepared an examination report, noting that Plaintiff received individual psychotherapy once a week and continued to experience "social withdrawal and anxiety" (Tr. 331). Dr. St. John found "moderate-severe difficulties" with frustration and anger, and, "significant difficulties with working memory" (Tr. 331). He found that while Plaintiff's judgment was intact, he experienced "severe difficulties with

-6-

social interaction" (Tr. 332). He assigned Plaintiff a GAF of 45[3] (Tr. 332).

November, 2014 x-rays of the left knee showed "tiny osteophytes in the patellofemoral compartment without swelling (Tr. 411). An x-ray of the lumbar spine showed "moderate spurs" throughout the lumbar spine with facet osteoarthritis (Tr. 417). The aorta showed atherosclerotic changes (Tr. 411). An x-ray of the right shoulder showed mild degenerative spurring (Tr. 412). He was diagnosed with adhesive capsulitis of the shoulder[4] (Tr. 419). The same month, Plaintiff underwent left trigger finger release surgery (Tr. 414). He was referred to an orthopedic specialist for additional evaluation (Tr. 417).

## 2.  Non-Treating Sources

In June, 2013, Muhammad Ahmed, M.D. performed a non-examining review of the treating and consultative evidence on behalf of the SSA, finding that Plaintiff was limited to exertionally "light" work, *see* fn 2, *above*, consisting of the ability lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 89). Dr. Ahmed found further Plaintiff would be limited to occasional postural activity (Tr. 89-90) but did experience any other physical limitation (Tr. 90). Due to Plaintiff's age and exertionally limitations, Dr. Ahmed found that

---

[3]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)("*DSM-IV-TR*") at 34.

[4]Although this page refers to the left shoulder conditions, the x-ray taken the same month was of the right shoulder (*compare* Tr. 412, 417).

Plaintiff was disabled (Tr. 94). The same month, Michele Leno, Ph.D.performed a non-examining assessment of the mental conditions on behalf of the SSA, finding the presence of an affective disorder and anxiety (Tr. 88). She found that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence, and pace (Tr. 87-88).

The following month, Nisha Singh, M.D., also an SSA source, found that the evidence was insufficient to assess Plaintiff's physical condition and determined that an "updated physical examination" was required (Tr. 101). Also in July, 2013, Maurice Prout, Ph.D., another SSA source, affirmed Dr. Leno's finding that Plaintiff's mental conditions were not disabling (Tr. 317-318).

On August 1, 2012, Leonid as Rojas, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of chest pain and palpitations associated with panic attacks (Tr. 321). Plaintiff also reported shortness of breath after walking more than one block or climbing a flight of steps (Tr. 321). Plaintiff reported a constant headache (Tr. 321). Dr. Rojas observed no difficulty getting on or off the examining table and found that Plaintiff could perform fine and gross manipulation (Tr. 322). Plaintiff exhibited reduced grip strength on the left (Tr. 322). Dr. Rojas noted a flat affect (Tr. 323). Plaintiff was able to heel and toe walk but exhibited a reduced range of lumbar spine and knee motion (Tr. 325-327).

On August 15, 2013, Dr. Ahmed performed a second non-examining assessment

-8-

based on the results of the consultative examination, this time finding that Plaintiff was capable of lifting 50 pounds occasionally and 25 frequently; walking, standing or sitting for about six hours in an eight-hour workday; and pushing and pulling without limitation (exertionally medium work) (Tr. 120). Dr. Ahmed again found that Plaintiff was limited to occasional postural activities (Tr. 121). On August 30, 2013, Nisha Singh, M.D. agreed with Dr. Ahmed's "medium work" finding, but disagreed with Dr. Ahmed's finding that Plaintiff was limited to occasional postural activities (Tr. 329-330). She found instead that Plaintiff was capable of such activities on a "frequent" basis (Tr. 329-330). The same day, Jay Younger, citing Dr. Ahmed's recent "medium work" finding, noted that the finding of only occasional postural activity had "the potential" for a disability finding at Step Five of the sequential analysis[5] (Tr. 111). Younger found that "[t]he medical evidence does not support 'occasional' postural limitations," and that, "those limitations were changed to frequently" (Tr. 111).

### C. Vocational Expert Testimony

VE Laura Brooks classified Plaintiff's job as a medical advisor as skilled and exertionally light, interpreter, skilled/sedentary; and security supervisor, skilled/sedentary (light as performed) (Tr. 236, 74). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

---

[5]

Younger's statement does not constitute medical evidence, much less a medical opinion. Defendant notes that Younger is a member of SSA's Office of Quality Performance ("OQP").

[P]lease assume an ability for medium work . . . involves lifting no more than 50 pounds occasionally and frequent lifting and carrying of objects up to 25 pounds. It also assumes ability to stand and walk at least six hours in an eight-hour work day and the ability to sit the same amount of time. Additional restrictions I would impose would be no more than occasional climbing of ramps or stairs, occasional climbing of ladders, ropes, or scaffolds, occasional balancing, occasional stooping and kneeling, crouching and crawling. In terms of mental abilities, this person has the ability 4, but he should be restricted to unskilled work and should not work with the general public. And in order to reduce stress, no fast production pace work there the pace is set by others. This would rule out assembly-line work or conveyor belt work. If you were to assume those restrictions, would there be any jobs? (Tr. 76).

The VE found that the hypothetical individual could perform the unskilled medium work of a cleaner (23,000 positions in southeastern Michigan) and laundry laborer (2,500) (Tr. 76). The VE noted, in effect, that if Plaintiff were limited to unskilled light work, he would be disabled as of his 55th birthday[6] (Tr. 77).

The VE testified that if the individual were also limited by a restriction of "no hazards," or, "no more than occasional climbing of ramps or stairs because of knee issues" it would not change the job findings (Tr. 77-78). She testified further that if the hypothetical restriction were amended to include "no constant handling or fingering" with the left hand, it would preclude all of the medium work (Tr. 77).

---

[6]

A determination that an individual 55 or older is capable of only unskilled, exertionally light or sedentary work generally directs a finding of disability. *Preslar v. Secretary of Health and Human Services,* 14 F.3d 1107, 1111 (6th Cir.1994); 20 C.F.R. § 404, Subpart P, App. 2, Rule 202.04; *See also Parks v. Commissioner of Social Sec.,* 2014 WL 1305033, *10 (E.D.Mich. March 31, 2014).

-10-

### D.   The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "[PTSD], depression, obstructive sleep apnea, obesity, and facet osteoarthritis at the lulmbosacral junction" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 21, 24).  The ALJ found that the conditions of trigger finger and Dupuytrens contracture, diagnosed in September, 2014, did not last or would not be expected to last for 12 months or longer (Tr. 24).  The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitations in social functioning and concentration, persistence, and pace (Tr. 25-26).  He found that Plaintiff retained the residual functional capacity ("RFC") for exertionally medium work with the following additional restrictions:

> [L]ifting no more than 50 pounds occasionally and frequent lifting and carrying of objects up to 25 pounds; the ability to stand and walk at least 6 hours in an 8-hour workday and the ability to sit the same amount of time; no more than occasional climbing of ramps or stairs; occasional climbing of ladders, ropes or scaffolds; occasional balancing; occasional stooping and kneeling, crouching and crawling; no hazards, that includes a restriction from work at unprotected heights or around dangerous moving machinery; in terms of mental abilities, this person has the ability for but should be restricted to unskilled work and should not work with the general public; and in order to reduce stress, no fast production paced work there the pace is set by others-this would rule out assembly line work or conveyor belt work (Tr. 27).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform the unskilled, medium work of a cleaner and laundry laborer (Tr. 36, 76).

The ALJ discounted the allegations of disability.  He found that Plaintiff's claim that

he could only walk for half a block was contradicted by the record (Tr. 33). In regard to the condition of PTSD, the ALJ noted that treating records showed a normal thought process, mood, affect, and behavior (Tr. 33). The ALJ stated that none of the treating records supported the claim of panic attacks[7] and that Plaintiff had been "noncompliant" with mental health treatment (Tr. 33-34).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

---

[7] This was a clear misstatement of the medical records. *See* Sec. B, *infra.*

whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Dr. Attar's September, 2014 Assessment

Plaintiff takes issue with the ALJ's accordance of "some weight" to Dr. Attar's September, 2014 "light work" assessment. *Plaintiff's Brief* at 13-17, *Docket #14,* Pg ID 481.

-13-

Noone disputes that Dr. Attar is a "treating source." It is well established that "[i]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

As discussed above, Dr. Attar found that due to arthritis of the knees, conjunctivitis, and obesity, Plaintiff was limited to exertionally light work (Tr 410). Dr. Attar also found that the condition of Dupuytren contracture prevented Plaintiff from reaching, pulling, pushing, and fine manipulating with the left hand (Tr. 410). The ALJ accorded "some weight" Dr. Attar's assessment on the basis that it was "generally consistent with the medical evidence of record indicating mostly mild findings" (Tr. 31). However, the ALJ did not state

-14-

whether he adopted or rejected Dr. Attar's primary finding that Plaintiff was limited to exertionally light work. The ALJ's finding that Plaintiff could instead perform medium work (Tr. 27) stands at directly at odds with Dr. Attar's finding.

Arguably, the administrative decision, read in its entirety, could be read to contain some support for the conclusion that Plaintiff could lift 50 pounds occasionally and 25 frequently. The ALJ accorded Dr. Ahmed's August, 2013 finding that Plaintiff could perform medium work "great weight" (Tr. 30). The ALJ also cited the Dr. Rojas' August, 2013 consultative observation of good spine alignment and normal gait and concentration (Tr. 28). However, the failure to provide an explanation for the rejection of Dr. Ahmed's dispositive finding that Plaintiff was limited to exertionally light work requires, at a minimum, a remand for clarification:

> [A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' SSR 96–2p, 1996 WL 374188, at *5 (1996). 'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

*Wilson*, *supra,* 378 F.3d at 544. A reasoned explanation for the rejection of the "light work" finding is particularly critical given that Plaintiff, 58 at the time of the decision, was of "advanced age." As discussed above, the determination that an individual 55 or older is

capable of only unskilled, exertionally light or sedentary work generally directs a finding of disability, whereas a finding that he could perform medium work would result in a non-disability finding. *Preslar v. Secretary of Health and Human Services,* 14 F.3d 1107, 1111 (6th Cir.1994); 20 C.F.R. § 404, Subpart P, App. 2, Rule 202.04.

I also note that the non-examining records created on behalf of the SSA support the finding that Plaintiff was limited to exertionally light work.  In June, 2013, Dr. Ahmed performed a non-examining review of the treating evidence and found the limitation to light work directed a disability finding (Tr. 89-90).  However, a physician apparently overseeing Dr. Ahmed's work, Dr. Singh, ordered an updated physical examination (Tr. 101).   On August 1, 2013, Dr. Rojas performed a consultative examination which showed some degree of limitation (Tr. 325-327).

Dr. Ahmed was sent "back to the drawing board" for a second non-examining assessment and on August 15, 2013, he duly found Plaintiff capable of medium work (Tr. 120).  However, Dr. Ahmed also found that Plaintiff  was limited to occasional postural activities (Tr. 121).  The transcript shows that on August 30, 2013 Dr. Singh agreed with Dr. Ahmed's "medium work" finding but disagreed with the finding of "occasional" postural activities (Tr. 329-330).  She found instead that Plaintiff could perform such activity "frequently" (Tr. 329-330).  The same day, a non-medical SSA employee, Jay Younger, made a file entry stating that Dr. Ahmed's finding of occasional postural activities had "the potential" for a disability finding at "Step Five" of the sequential analysis and that "those

-16-

limitations were changed to frequently" (Tr. 111). The record entries, particularly Mr. Younger's statements, raise some concern about a result-oriented assessment, *i.e.*, that both medical and non-medical individuals engaged in "revising" the RFC until it reflected a finding of non-disability.

The presence of possible manipulative limitations also raises concerns. At the hearing, while VE testified that Plaintiff's alleged limitations in left-sided gripping would result in the inability to perform medium work, the RFC in the administrative opinion omits any gripping limitations (Tr. 27). The ALJ found that the condition of Dupuytrens contracture was not diagnosed until September, 2014 and thus, did not meet or could be expected to last for the 12-month durational requirement to qualify as a severe impairment (Tr. 24); 42 U.S.C. §423(d)(1)(A). However, because Plaintiff underwent surgery for the condition subsequent to the administrative hearing (even assuming that the surgery improved the condition) it is impossible to ascertain whether the surgery wholly resolved the condition (Tr. 414).

### B. Additional Grounds for Remand

Although neither party addressed the ALJ's analysis of the mental conditions, the administrative determination contains a wholly erroneous statement regarding Dr. St. John's psychotherapy records. The ALJ discounted Plaintiff's credibility, in part, as follows: Plaintiff "testified that he has panic attacks; however, there is no medical evidence of record to support this allegation" (Tr. 33). However, to the contrary, Dr. St. John found on at least

-17-

25 separate occasions that Plaintiff experienced "panic attacks," or "avoidant/phobic" behavior, or both (Tr. 246, 263, 266, 267, 268, 269, 270, 271, 313, 361, 363, 364, 365, 368, 381, 383, 384, 385, 386, 387, 388, 389, 391, 393, 397, 398). The ALJ's error not only casts doubt on the credibility determination, but his finding that Dr. St. John's disability opinions (including findings of marked social and adaptive limitation) were entitled to only limited weight (Tr. 32, 274-275). While the RFC contains a preclusion on work with "the general public," it is uncertain whether the ALJ would have found greater restrictions, *i.e.*, limitation on interactions with coworkers, supervisors, *etc.*, or, even a finding of disability, had he considered the record evidence showing the presence of panic attacks (Tr. 27).

The final question is whether to remand for further fact-finding or an award of benefits. The Sixth Circuit has held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). Despite the presence of errors requiring remand, multiple questions of fact remain and the administrative findings require clarification. Accordingly, I recommend that the case be remanded for further proceedings rather than an award of benefits.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent

that the case be remanded to the administrative level for further proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 23, 2017                    s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on February 23, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants February 23, 2017.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen